IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WILLIAM BRANDEN SPICER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO: |
| v. | ) |
| | ) |
| EXPERIAN INFORMATION | ) |
| SOLUTIONS, INC., TRANS UNION | ) |
| LLC, and CREDENCE RESOURCE | ) |
| MANAGEMENT, LLC, | ) |
| | ) |
| Defendants. | |

# COMPLAINT

1. This is an action for damages brought by an individual consumer, William Branden Spicer, against Experian Information Solutions, Inc. ("Experian"), Trans Union LLC ("TU"), and Credence Resource Management, LLC ("CRM") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA").

2. Mr. Spicer is an active service member in the United States Army.

3. Mr. Spicer's father is also named "William", but he has a middle name that is different from Mr. Spicer: Jeffery.

4. Mr. Spicer's father has a birthday and social security number that are different from Mr. Spicer's birthday and social security number.

5. Mr. Spicer's father has a collection account with CRM.

6. But TU and Experian are reporting Mr. Spicer's father's CRM collection account on Mr. Spicer's consumer report.

7. The existence of a collection account in Mr. Spicer's consumer report has had significant and deleterious consequences, and Mr. Spicer has been warned that his position in the U.S. Army is at risk if the account remains on his consumer report.

8. Mr. Spicer has disputed the erroneous information with Experian and TU, but to no avail. The CRM account remains on his consumer reports.

9. Thus, Mr. Spicer has no choice but to pursue this FCRA lawsuit to try to force Experian, TU, and CRM to report accurate information.

**JURISDICTION AND VENUE**

10. This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

11. Venue is proper in this Court under 28 U.S.C. § 1391 as Defendants regularly conduct business in this district, including contracting to supply goods and services in this district, and a substantial part of the events giving rise to the claims occurred in this district.

12. Mr. Spicer is a resident of this division and district.

13. Mr. Spicer is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

14. Equifax is a Georgia limited liability company, it is a consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f), and it conducts substantial and regular business activities in this judicial district.

15. Experian is an Ohio corporation, it is a consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f), and it conducts substantial and regular business activities in this judicial district.

16. CRM is a Nevada limited liability company, it is a person who furnishes information to consumer reporting agencies under the FCRA, 15 U.S.C. § 1681s-2, and it conducts substantial and regular business activities in this judicial district.

## FACTUAL ALLEGATIONS

***Sections 1681e(b) and 1681i(a) of the FCRA Require Substantive Investigations and Prohibit Mere "Parroting" of CRAs' Creditor-Customers***

17. "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical

3

role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

18. Section 1681e(b) sets forth the CRA's overall duty with respect to accuracy:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

*Id.*

19. Section 1681i(a), on the other hand, requires much more from a CRA after a consumer has placed it on notice of an inaccuracy through a dispute:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period[.]

15 U.S.C. § 1681i(a)(1)(A).

4

20. Section 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.,* 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

21. It has long been the law that a CRA, such as Experian and TU, does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the dispute item. *See, e.g.*, *Pinner v. Schmidt,* 805 F.2d 1258, 1262 (5th Cir. 1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-cv-515-TWT-LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), *report & recommendation adopted,* No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.").

22. That "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

23. As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, 'investigation,' is defined as '[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining 'investigation' as 'a searching inquiry').

357 F.3d 426, 430 (4th Cir. 2004).

24. Further, as the CRAs here are aware, courts have repeatedly held that even though the term "investigation" is not used in Section 1681e(b), it is clear that a CRA has a duty to conduct a reasonable initial investigation pursuant to Section 1681e(b) as well as Section 1681i(a) and that this is "central" to the CRA's duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) 'reasonable procedures' that (2) 'assure' (3) 'maximum possible accuracy.' To 'assure' means 'to make sure or certain: put beyond all doubt.' *Webster's Third New International Dictionary* 133 (1993). 'Maximum' means the 'greatest in quantity or highest degree attainable' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived . . . .' *Id.* at 1396, 1771. It is difficult to imagine how 'maximum possible accuracy' could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a 'reinvestigation,' necessarily implying that an

6

'investigation' was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

25. The Consumer Financial Protection Bureau has noted that "experience indicates that [CRAs] lack incentives and under-invest in accuracy." Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, Mar. 2, 2017). This is particularly true as to how the CRAs here have complied with their now 50-year-old obligation to conduct meaningful accuracy investigations. All three Defendant CRAs have been repeatedly sued by consumers, sanctioned by regulators, and reprimanded by both District and Appellate courts to do more than an automated parroting of what their customer-creditors instruct.

26. Additionally, the FCRA imposes duties on persons who furnish information to a consumer reporting agency (a "furnisher"). *See* 15 U.S.C. §§ 1681s-2(a), (2), (4), (5). Specifically, the furnisher must take certain actions after receipt of notice of a consumer dispute from a consumer reporting agency. 15 U.S.C. § 1681s-2-(b)(1)(A-E).[1]

27. Section 1681s-2(b) of the FCRA establishes a mechanism for consumers to dispute the accuracy or completeness of information that furnishers

---

[1] Plaintiff asserts a claim against CRM under Section 1681s-2(b), and not under Section 1681s-2(a).

provide to consumer reporting agencies. After a consumer has submitted a dispute to a consumer reporting agency, the consumer reporting agency must notify the furnisher of the disputed information. 15 U.S.C. § 1681i(a)(2). The consumer reporting agency must provide this notice of dispute within five days of receipt of the dispute and must include "all relevant information" provided by the consumer. 15 U.S.C. § 1681i(a)(2)(B).

28. Once a furnisher receives notice of a dispute from a consumer reporting agency, Section 1681s-2(b) requires that the furnisher "shall" (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the consumer reporting agency in connection with the dispute; and (3) report the results of the investigation to the consumer reporting agency. 15 U.S.C. § 1681s-2(b)(1)(A)-(C).

29. Should the investigation determine that the disputed information is inaccurate or incomplete or cannot be verified, the furnisher must modify, delete, or permanently block the reporting of that information to consumer reporting agencies, as appropriate based on the results of the reinvestigation. 15 U.S.C. § 1681s-2(b)(1)(E).

***Facts Relevant to Mr. Spicer***

30. In 2025, Mr. Spicer learned that his father's collection account with CRM was appearing on his Experian and TU consumer reports.

31. The existence of the CRM collection account on his Experian and TU reports made it appear that Mr. Spicer had an account in collection for which he owed more than $2,600.

32. Mr. Spicer owns no such account.

33. Mr. Spicer's father, William Jeffery Spicer, is the owner of the account.

34. Mr. Spicer and his father have different birthdays.

35. Mr. Spicer and his father have different social security numbers.

36. Mr. Spicer and his father have other different personal information.

37. This erroneous information misstates Mr. Spicer's credit history and negatively impacts his credit score and his ability to obtain credit.

38. Additionally, as Mr. Spicer is active duty in the United States Army, the existence of a collection account on his consumer reports can have significant and deleterious effects on his military service.

39. For example, Mr. Spicer's superiors told him that so long as the CRM collection account remained on his consumer reports, his position in the U.S. Army is at risk.

40. To try to correct his consumer reports, Mr. Spicer filed disputes with Experian and TU in the spring of 2025 in which he told the CRAs that the account did not belong to him.

41. Experian and TU received Mr. Spicer's disputes.

42. Following their receipt of Mr. Spicer's disputes, Experian and TU conducted investigations.

43. Experian and TU sent Mr. Spicer's disputes to CRM.

44. CRM received the disputes from Experian and TU.

45. CRM did not conduct reasonable reinvestigations into some or all of Mr. Spicer's disputes.

46. For example, CRM failed to review the birthday on its file and to compare it with Mr. Spicer's birthday.

47. CRM also failed to review the social security number on its file and to compare it with Mr. Spicer's social security number.

48. Instead, CRM simply reported to Experian and TU that it had verified the reporting.

49. Experian and TU failed to correct their inaccurate reporting.

50. Experian and TU simply parroted the results of CRM's reinvestigation results, and took no steps of their own to determine whether the reporting that Mr. Spicer had a collection account with CRM for which he had a balance was accurate.

51. Experian and TU simply reported to Mr. Spicer that CRM had "verified" the account as belonging to him.

52. Because of Defendants' actions and their failure to corrects their errors, Mr. Spicer has suffered, and continues to suffer, actual damages, lost opportunity to receive credit, economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with his normal and usual activities.

## FIRST CLAIM FOR RELIEF

## (15 U.S.C. § 1681i(a))

## (against Experian and TU)

53. Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

54. After Plaintiff submitted his disputes, Defendants Experian and TU violated 15 U.S.C. § 1681i(a)(1) by failing to conduct reasonable reinvestigations to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit files.

11

55. After Plaintiff submitted his disputes, Defendants Experian and TU violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

56. After Plaintiff submitted his disputes, Defendants Experian and TU violated 15 U.S.C. § 1681i(a)(5) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit file or modify the items of information upon a lawful reinvestigation.

57. As a result of these violations of 15 U.S.C. § 1681i(a)), Plaintiff has suffered, and continues to suffer, actual damages, lost opportunity to receive credit, economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

58. The violations by Defendants were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

59. Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

**SECOND CLAIM FOR RELIEF**

**(15 U.S.C. § 1681e(b))**

**(against Experian and TU)**

60. Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

61. Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports furnished regarding Plaintiff.

62. Defendants reported information that they had reason to know was inaccurate.

63. Defendants knew or should have known about their obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

64. Defendants obtained or had available substantial written materials that apprised them of their duties under the FCRA.

65. Despite knowing of these legal obligations, Defendants acted consciously in breaching their known duties and deprived Plaintiff of his rights under the FCRA.

66. As a result of these violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered, and continues to suffer, actual damages, lost opportunity to receive credit, economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

67. The violations by Defendants were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

68. Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

## THIRD CLAIM FOR RELIEF

## (15 U.S.C. § 1681s-2(b))

## (against CRM)

69. Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

70. Defendant CRM understood the nature of Plaintiff's disputes when it received them from the CRAs.

71. Defendant CRM violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

72. Defendant CRM violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the CRAs.

73. Defendant CRM violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the reporting of the inaccurate and derogatory information it was reporting to the CRAs about Plaintiff.

74. Defendant CRM knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

75. Defendant CRM obtained or had available substantial written materials that apprised it of its duties under the FCRA.

76. Despite knowing of these legal obligations, Defendant CRM acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

77. Defendant CRM's violation of the FCRA was willful, rendering it liable pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant CRM was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

78. Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. Actual damages to be determined by the jury, or statutory damages of $100 to $1,000 to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Attorneys' fees; and

4. Costs of the action.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

DATED: July 1, 2025

By: /s/ Andrew Weiner
Jeffrey B. Sand
GA Bar No. 181568
Andrew L. Weiner
GA Bar No. 808278
WEINER & SAND LLC
800 Battery Avenue SE
Suite 100
Atlanta, GA 30339
(404) 205-5029 (Tel.)

16

(404) 254-0842 (Tel.)
(866) 800-1482 (Fax)
js@wsjustice.com
aw@wsjustice.com

*Counsel for Plaintiff*